UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOHN K. WARNER

    Plaintiff,

v

COUNTY OF MUSKEGON AND MARK
EISENBARTH, BENJAMIN E. CROSS, SUSIE
HUGHES, ROBERT SCOLNIK, MARVIN R.
ENGLE,  CHARLES NASH, JEFF LOHMAN,
TERRY J. SABO, and KENNETH MAHONEY, all
in their individual capacities, and the MUSKEGON
COUNTY BOARD OF COMMISSIONERS,

    Defendants.

CASE NO. 1:16-1307- CV-

HON.

Kevin B. Even (P38599)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiff
keven@shrr.com
900 Third St., Ste 204
Muskegon, MI 49440
231-724-4320

## COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil action
arising out of the same transaction or occurrence as
alleged in the Complaint.

NOW COMES Plaintiff, JOHN K. WARNER, by and through his attorneys, SMITH HAUGHEY RICE & ROEGGE, and for his Complaint against the Defendants, County of Muskegon and Mark Eisenbarth, Benjamin E. Cross, Susie Hughes, Robert Scolnik, Marvin R. Engle, Charles Nash, Jeff Lohman, Terry J. Sabo, and Kenneth Mahoney all in their individual capacities and the Muskegon County Board of Commissioners states and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, John K. Warner ("Warner"), is a resident of the County of Muskegon, State of Michigan and brings this action resulting from damages incurred due to his unlawful termination as the Director of the Muskegon County Department of Public Works ("Department") on July 5, 2016 by Defendant, Mark Eisenbarth.

2. Defendant, County of Muskegon ("County"), is a Michigan unit of government and a body corporate.

3. Defendant, Muskegon County Board of Commissioners ("Board") is a local legislative or governing body of County, empowered by state constitution, statute, charter, ordinance, resolution or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function.

4. At all relevant times, Defendant, Mark Eisenbarth ("Eisenbarth" also referred to herein as the "Administrator") has been employed as the Administrator for the County and has at all relevant times resided in Muskegon County, State of Michigan.

5. At all relevant times, Defendant, Benjamin E. Cross ("Cross") has resided in Muskegon County, State of Michigan.

6. At all relevant times, Defendant, Susie Hughes ("S. Hughes") has resided in Muskegon County, State of Michigan.

7. At all relevant times Defendant Robert Scolnik ("Scolnik") has resided in Muskegon County, State of Michigan.

8. At all relevant times, Defendant, Marvin R. Engle ("Engle") has resided in Muskegon County, State of Michigan.

9. At all relevant times, Defendant, Charles Nash ("Nash") has resided in Muskegon County, State of Michigan.

-2-

10. At all relevant times, Defendant, Jeff Lohman ("Lohman") has resided in Muskegon County, State of Michigan.

11. At all relevant times, Defendant, Terry J. Sabo ("Sabo") has resided in Muskegon County, State of Michigan.

12. At all relevant times, Defendant, Kenneth Mahoney ("Mahoney") has resided in Muskegon County, State of Michigan.

13. The Administrator was hired by the County to manage the County's affairs.

14. This is a civil action under 42 U.S.C § 1983 seeking damages against Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo and Mahoney for committing acts, under color of law, with the intent and for the purpose of depriving Warner of rights secured under the Constitution and laws of the United States.

15. This case arises under the United States Constitution and 42 U.S.C. §§ 1983 and 1988, as amended.

16. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

17. This is also a civil action seeking damages against Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo and Mahoney for committing acts, under color of law, with the intent and for the purpose of depriving Warner of rights secured under Article 1§ 17 of the Constitution of the State of Michigan.

18. In addition, this is a civil action against the County for wrongful termination of Warner's employment as the Director of the Department.

19. In addition, this is a civil action against the Board for violation of Act 267 of 1976, MCL § 15.261 et seq., and hereinafter referred to as the "Open Meetings Act."

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

20. The amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs, interest and attorney's fees.

**GENERAL ALLEGATIONS**

21. Warner has been a long time employee of the County who was appointed by the Board as the Director of the Department in 2011.

22. As a Director for the County, Warner could only be terminated by the Board following a full and complete hearing in accordance with the Rules of the Board ("Rules") adopted by the Board and published for the benefit of County employees including Warner.

23. The Rules state that a director may be terminated only upon a finding by the Board that the director is incompetent to execute properly the duties of the office or, on charges and evidence, the Board is satisfied that the director is guilty of official misconduct or habitual or willful neglect of duty; and that the misconduct or neglect is a sufficient cause for removal.

24. Pursuant to the Rules, the Administrator has the authority to discipline a director of a department, including a suspension with a recommendation for discharge, subject to the procedures established by the Rules, but the Administrator does not have the power to terminate a director including Warner.

25. The Rules provide that written notice of a suspension with a recommendation of discharge of a director shall be given to the director, by the Administrator, with the reasons stated.

26. On May 25, 2016 the Administrator, pursuant to a written letter ("Suspension Letter") suspended Warner's employment with the County and recommended him for discharge.

27. The Suspension Letter notifying Warner of his suspension of his employment as the Director was prepared by Douglas Hughes ("Corporate Counsel") and hand delivered by Corporate Counsel to Warner.

28.   The Suspension Letter stated that the Administrator determined Warner was "unable to execute properly the duties of your office" due to the following reasons:

    a.   Warner's alleged "unprofessional conduct" at the May 4, 2016 meeting of the Solid Waste Planning Committee ("SWPC");

    b.   Warner's alleged creation of a "hostile work environment for other members of County staff", and

    c.   Unidentified "actions" of Warner were "contrary to the statutory authority and bylaws of the SWPC."

29.   The May 4, 2016 meeting of the SWPC was recorded and an audio tape of the meeting was preserved.

30.   The Suspension Letter did not state what conduct was deemed "unprofessional conduct."

31.   The Suspension Letter did not state what Warner was incompetent to execute properly the duties of his office.

32.   The Suspension Letter did not state what Warner was guilty of official misconduct, or habitual or willful neglect of duties of his office.

33.   The Suspension Letter did not identify any alleged behavior that was wrongful or that created a "hostile work environment."

34.   The Suspension Letter did not identify any County employee who was subjected to a "hostile work environment."

35.   The Suspension Letter did not identify any "actions" that were "contrary to the statutory authority and bylaws of the SWPC."

36.   Following the delivery of the Suspension Letter to Warner, Corporate Counsel undertook an investigation to establish justification for the action taken by the Administrator to suspend and recommend Warner for discharge.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

37. The investigation referenced in the preceding paragraph included interviewing County employees and combing through County employee emails.

38. The investigation revealed that no complaint of harassment against Warner was ever received by the County that was in accordance in the County's anti-harassment policy.

39. Eisenbarth was well aware of the County's anti-harassment policy.

40. Eisenbarth knew that he had a duty to report harassment to the County's EEO office.

41. Eisenbarth knew that he had a duty to report harassment to the County's EEO office and if he failed to do so his failure constituted a violation of the County's anti-harassment policy.

42. Eisenbarth never made a report of harassment by Warner to the County's EEO office.

43. On May 26, 2016 Warner requested a pre-termination hearing before the Chairman of the Board, i.e., Sabo in accordance with the Rules.

44. On May 26, 2016 Warner requested in writing from the County a complete copy of his personnel record pursuant to the Bullard-Plawecki Employee Right to Know Act, MCL § 423.501 et seq., Act 397 of 1978.

45. On May 26, 2016 a written Freedom of Information act request ("FOIA") request, MCL § 15.231 et seq., Act 442 of 1976, was submitted by Warner's counsel to the Administrator seeking certain information relevant to the conclusions set forth in the Suspension Letter.

46. The pre-termination hearing was scheduled for June 24, 2016.

47. As of the commencement of the pre-termination hearing, Warner had not been provided with his personnel folder previously requested on May 26, 2016.

48. As of the commencement of the pre-termination hearing, Warner's counsel had not been provided with documents requested pursuant to the FOIA request dated May 26, 2016.

49. The actions of the Administrator, Corporate Counsel and the County in depriving Warner of a copy of his personnel file and copies of the documents relied upon by the Administrator in making his decision to suspend and recommend Warner for discharge were intentionally designed to deprive Warner of an opportunity to prepare for the pre-termination hearing.

50. No evidence, either by way of testimony or documentary evidence, was presented by the County or the Administrator at the pre-termination hearing; not a single witness testified nor was a single document produced.

51. After the close of the pre-termination hearing, Sabo informed Warner that his FOIA request had been granted and his personnel folder was then produced.

52. Warner's personnel folder did not contain any information evidencing his alleged "unprofessional conduct" at any meeting of the SWPC.

53. Warner's personnel folder did not contain any information evidencing his alleged "hostile work environment" of any County employee.

54. Warner's personnel folder did not contain any information evidencing any "actions" of Warner that was "contrary to the statutory authority and bylaws of the SWPC."

55. Sabo then adjourned the pre-termination hearing until June 29, 2016 at 4:00 pm at Corporate Counsel's office.

56. On June 25, 2016 Warner's counsel received from Corporate Counsel approximately 10,000 emails to review, however no documents were identified as those relied upon (as requested) by the Administrator in making his decision to suspend and recommend Warner for discharge.

57. The actions of the Administrator, Corporate Counsel and the County in producing approximately 10,000 emails rather than just copies of the documents relied upon by the Administrator in making his decision to suspend and recommend Warner for discharge were intentionally designed to

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

deprive Warner of an opportunity to prepare for the adjourned pre-termination hearing and to be made aware of the evidence that allegedly supported the charges against him.

58. At the time of the adjourned pre-termination hearing on June 29, 2016 no evidence, either by way of testimony or via documentation was produced by the County or the Administrator in support of the Administrator's decision to suspend and recommend Warner for discharge; not a word was spoken nor was a document produced.

59. The actions of the Administrator, Corporate Counsel and the County in not producing testimony or documentation in support of the Administrator's decision to suspend and recommend Warner for discharge were intentionally designed to deprive Warner of due process of law.

60. At the conclusion of the adjourned pre-termination hearing on June 29, 2016 Sabo affirmed the decision of the Administrator without having heard any evidence presented by the Administrator or by the County.

61. As of the conclusion of the adjourned pre-termination hearing of June 29, 2016 neither Sabo nor the Administrator had listened to the audio tape of the SWPC meeting held on May 4, 2016.

62. On July 5, 2016 the Administrator terminated Warner's employment without a full and complete hearing before the Board as required by the Rules.

63. Warner, while employed by the County had a record of accomplishment and a good name, reputation and was known in the community as a person of integrity.

64. The Administrator's decision to discharge Warner in violation of the Rules imposed on him a stigma that foreclosed his freedom to take advantage of certain other employment opportunities.

65. As a public employee and a Director of a County Department, Warner had a constitutionally protected property interest in his continued employment and could not be terminated without due process and without cause as provided for in the Rules.

66. Warner's honor and/or integrity is at stake because of what the County and the Administrator has done to him; notice and an opportunity to be heard are essential and Warner was entitled to due process protection of freedom from arbitrary action which jeopardized his property interest in his public employee job.

67. The Administrator's decision to terminate Warner before the Board could conduct a full and complete hearing, made Warner's request for a hearing before the Board meaningless as the die had been cast thereby depriving Warner of due process of law.

68. Despite the fact that Warner had already been terminated on July 5, 2016 by the Administrator, on August 24, 2016, the Board convened a hearing regarding Warner's employment.

69. The Board's hearing of August 24, 2016 was continued on September 1, 2016.

70. On October 11, 2016 at approximately 2:00 pm the Board convened a meeting (the "First Meeting"), with a quorum of the Board present, to deliberate on the charges made against Warner.

71. At the First Meeting the Board deliberated upon the charges against Warner and made a number of decisions regarding the charges advanced against Warner, despite the fact that he had already been terminated on July 5, 2016.

72. On October 11, 2016 at 3:12 pm the Board convened another meeting (the "Second Meeting").

73. At the Second Meeting the Board did not deliberate upon the charges against Warner but in a perfunctory way made a decision on the charges against Warner, despite the fact that he had already been terminated on July 5, 2016 in violation of the Rules.

## COUNT I -- OPEN MEETINGS ACT VIOLATION

74. Plaintiff hereby incorporates all of the foregoing allegations.

75. Board is a public body as that term is defined by the Open Meetings Act.

76. The Open Meetings Act requires that all decisions of a public body must be made at a meeting open to the public pursuant to public notice in accordance with the Open Meetings Act.

77. The Open Meetings Act required that the Board's deliberation of the charges against Warner were to take place at a meeting open to the public.

78. The Board's deliberation of the charges against Warner did not take place at a meeting open to the public.

79. The First Meeting was convened without public notice having been posted stating the date, time and place of the First Meeting at least eighteen (18) hours before the First Meeting in a prominent and conspicuous place at both the Muskegon County Courthouse and on the Muskegon County Website.

80. In fact no public notice of the First Meeting was posted.

81. The purpose of the First Meeting was to deliberate upon and make a decision on the charges leveled against Warner by the Administrator despite the fact that Warner's employment had already been terminated on July 5, 2016.

82. On information and belief, the Board did in fact deliberate and make a decision on the charges leveled against Warner despite the fact that Warner's employment had already been terminated.

83. The First Meeting was held in violation of Michigan Law specifically in violation of the Open Meetings Act.

84. The decision of the Board at the First Meeting was invalid.

85. The perfunctory decision made by the Board at the Second Meeting was window dressing to make it appear as though the Board was complying with the Open Meetings Act when in fact the deliberations and the decision had already been made at the First Meeting.

86. The decision of the Board at the Second Meeting was invalid.

PLAINTIFF REQUESTS that this court enter judgment against the Muskegon County Board of Commissioners for the following relief:

1. A declaratory judgment determining that the decisions of the Board made at the First Meeting and the Second Meeting be invalidated for not having complied with the requirement of the Open Meetings Act;

2. An award to Plaintiff of the costs and disbursements of this action, including actual attorney's fees pursuant to the Open Meetings Act; and

3. An award to Plaintiff of such other and additional legal and/or equitable relief to which he may be entitled.

## COUNT II – § 1983 VIOLATION

87. Plaintiff hereby incorporates all of the foregoing allegations herein by reference.

88. Warner enjoyed a constitutionally protected property interest in continued employment.

89. Warner was terminated under the color of state law.

90. The termination resulted without Warner being afforded due process of law.

91. Warner suffered a loss of his constitutionally protected interest in retaining his job.

92. Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo and Mahoney's termination of Warner without a full and complete hearing before the Board violated the Rules of the Board.

93. Before depriving Warner of his constitutionally protected property interest in continued employment, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo and Mahoney did not conduct a pre-termination hearing or otherwise afforded Warner notice of the grounds for his termination, and explanation of the evidence against him, and a meaningful opportunity to respond.

94. Warner's right to retain his job would have continued but for Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo and Mahoney's unlawful termination in violation of the Rules.

95. The actions and conduct of Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo, and Mahoney as set forth herein have deprived Warner of his due process liberty and property interests guaranteed to him by the Constitution of the United States.

96. The actions and conduct of Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo, and Mahoney as set forth herein created a false and defamatory impression about Warner in connection with his termination thereby depriving Warner of his liberty interest by destroying his good name in the community and have foreclosed him from practicing his profession as a director of a county department.

97. Eisenbarth publicly made allegations that Warner had harassed county employees and created a "hostile work environment" constituted a stigmatizing statement harming Warner's reputation in the community.

98. Eisenbarth's allegations that Warner had harassed county employees and created a "hostile work environment" foreclosed Warner from obtaining similar employment as a director of a county public works department.

99. The actions and conduct of Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo, and Mahoney as set forth herein by failing to abide by the Rules and failing to conduct its hearing at an open meeting as required by law prevented Warner from having a meaningful due process hearing and an opportunity to clear his name.

100. Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo, and Mahoney all knew or should have known that the Administrator's actions in failing to abide by the Rules and failing to conduct a hearing at an open meeting as required by law prevented Warner from having a meaningful due process hearing and an opportunity to clear his name.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

101. The Administrator's actions in failing to disclose evidence of circumstances and persons who were allegedly harassed by Warner rendered any hearing meaningless and constitute a deprival of a meaningful due process hearing and an opportunity for Warner to clear his name at an open public meeting.

102. Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo, and Mahoney knew or should have known that the Administrator's actions in failing to disclose evidence of persons who were allegedly harassed by Warner rendered any hearing fundamentally unfair and deprived him of due process.

103. The conduct and actions of Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo, and Mahoney as set forth herein were undertaken when they were acting under the color of state law and said actions deprived Warner of federal equal protection and due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, and made actionable by 42 U.S.C. § 1983 (The "Civil Rights Act").

104. Despite having requested a pre-termination hearing, and despite having requested an appeal before the Board, the Administrator chose to terminate Warner in violation of the Rules and without presenting any evidence justifying Warner's termination.

105. Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo, and Mahoney knew or should have known that Administrator's actions in failing to disclose evidence of persons who were allegedly harassed by Warner rendered any hearing fundamentally unfair and deprived him of due process.

106. Subsequent to the Administrator's decision to suspend and recommend Warner for discharge, Corporate Counsel under took an investigation to come up with reasons for Warner's termination.

107. During the process of Corporate Counsel's investigation Corporate Counsel or other attorneys in his office who work at his direction began interviewing County employees and combing through emails to come up with a rationale to support the Administrator's decision that were not considered at the time of the delivery of the Suspension Letter.

108. The Rules provide that a hearing Board member may have the aid and advice of the County staff other than the staff which has been or is engaged in investigating in connection with the case against Warner.

109. Notwithstanding the prohibition in the Rules set forth in the preceding paragraph Corporate Counsel who investigated the charges against Warner also acted as the advisor to the Board in a hearing conducted by the Board after Warner had been terminated by the Administrator.

110. Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo, and Mahoney knew or should have known that Corporate Counsel's investigation into the charges against Warner while at the same time acting as the advisor to the Board in a hearing conducted by the Board after Warner's wrongful termination was in violation of the Rules, thereby rendering the hearing fundamentally unfair and deprived him of due process.

111. The hearing conducted by the Board in August 2016 and in September 2016 was a charade as the die had already been cast as Warner had already been terminated and the Board had been fully prejudiced towards a predetermined outcome as wrongfully influenced by the Administrator and Corporate Counsel as set forth above.

112. Following the unlawful termination of Warner by the Administrator, the Administrator had already advertised for Warner's replacement and conducted interviews for a new director.

113. On October 25, 2016 the Board formally appointed Matthew Farrar as the Director of Public Works to fill the position previously held by Warner.

114. The actions and conduct of Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo and Mahoney as set forth herein were either motivated by evil motive or intent or the result of a reckless or callous indifference to the federally protected rights of Warner.

115. The actions and conduct of Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo and Mahoney in depriving Warner of his constitutionally protected property interest and liberty interest as set forth herein abridge his right to due process of law in violation of the Fourteenth Amendment to the U.S. Constitution.

116. As a direct and proximate result of the actions and conduct of Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo and Mahoney as set forth herein Warner has suffered and will continue to suffer substantial damages, including, but not limited to, the loss of wages and other benefits he would have received as an employee of the County.

PLAINTIFF REQUESTS that this court enter judgment against Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo, and Mahoney for the following relief:

1. A declaratory judgment pursuant to 28 USC § 2201 declaring that Defendants' actions in depriving Plaintiff of his constitutionally protected property interest in continued employment in violation of the Rules were unlawful and violative of the rights of Plaintiff under the Due Process Clause of the Fourteenth Amendment;

2. A declaratory judgment pursuant to 28 USC § 2201 declaring that Defendants' actions in depriving Plaintiff of his constitutionally protected liberty interest in his good name and reputation and foreclosing his freedom to take advantage of certain other employment opportunities in violation of the Rules were unlawful and violative of the rights of Plaintiff under the Due Process Clause of the Fourteenth Amendment;

3. An award to Plaintiff of back pay or damages for lost earnings in the amount he would have earned, with interest, from the date that his employment was terminated;

4. An award to Plaintiff of compensatory damages sufficient to compensate him for his mental anguish and emotional distress, embarrassment and humiliation, and damage to his professional reputation as a result of Defendants' actions;

5. An award to Plaintiff of punitive damages against Defendants as a result of the reckless indifference with which they violated Plaintiff's right to due process of law;

6. An award to Plaintiff of the costs and disbursements of this action, including reasonable attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 USC § 1988(b), and

7. An award to Plaintiff of such other and additional legal and/or equitable relief to which he may be entitled.

## COUNT III- WRONGFUL DISCHARGE

117. Plaintiff hereby incorporates all of the foregoing allegations herein by reference.

118. While Warner was employed by the County, the Rules instilled legitimate expectations that Warner could only be terminated in accordance with the Rules.

119. Warner reasonably relied on these policies and procedures and, as a result, legitimately expected that he could only be involuntarily terminated in accordance with the Rules.

120. At all times relevant the County promised, via its Rules, that Warner could only be terminated following a full due process hearing and only after the Board determined that Warner was incompetent to execute properly the duties of the office, was guilty of official misconduct that is of sufficient cause, or guilty of habitual or willful neglect of duty that is of sufficient cause to justify termination.

121. The Administrator's decision to terminate Warner was in clear in violation of the Rules.

122. The Administrator's failure to present evidence prior to the decision to terminate Warner was in clear violation of the Rules.

123. The conduct and actions of Corporate Counsel acting as both investigator and advisor to the Board during a charade hearing was in clear violation of the Rules.

124. There was insufficient cause to terminate Warner.

125. As a result of the County's wrongful termination of Warner's employment, the County interfered with the legitimate expectation, instilled by the County in Warner that he would only be involuntarily terminated in accordance with the Rules.

126. As a direct and proximate result of the County and the Board's failure to abide by its Rules, Warner was wrongfully terminated and he has suffered harm, including lost earnings and other employment benefits, humiliation and embarrassment in an amount to be established at trial.

127. At all times relevant, Warner fulfilled his duties and conditions of his employment and was ready, willing and able to continue performing them in a competent and satisfactory manner.

PLAINTIFF REQUESTS that this court enter judgment against County for the following relief:

1. An award to Plaintiff of his lost earnings and lost benefits, including future earnings and future benefits in the amount he would have earned, with interest, from the date that his employment was terminated;

3. An award to Plaintiff of compensatory damages sufficient to compensate him for his embarrassment and humiliation, and damage to his professional reputation;

4. An award to Plaintiff of the costs and disbursements of this action, including reasonable attorney's fees, and

5. An award to Plaintiff of such other and additional legal and/or equitable relief to which he may be entitled.

**COUNT IV – VIOLATION OF MICHIGAN CONSTITUTION, 1963 ART 1, §17.**

128. Plaintiff hereby incorporates all of the foregoing allegations.

129. The Michigan Constitution provides that shall be deprived of life, liberty or property, without due process of law.

130. The actions and conduct of Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo and Mahoney in depriving Warner of his constitutionally protected property interest and liberty interest as set forth herein abridge his right to due process of law in violation of the Michigan Constitution, 1963 Article 1, §17.

131.   As a direct and proximate result of the actions and conduct of Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo and Mahoney, as set forth herein Warner has suffered and will continue to suffer substantial damages, including, but not limited to, the loss of wages and other benefits he would have received as an employee of County.

PLAINTIFF REQUESTS that this court enter judgment against Eisenbarth, Cross, S. Hughes, Scolnik, Engle, Nash, Lohman, Sabo and Mahoney for the following relief:

1. A declaratory judgment declaring that Defendants' actions in depriving Plaintiff of his constitutionally protected property interest in continued employment in violation of the Rules were unlawful and violative of the rights of Plaintiff under the Due Process Clause of the Michigan Constitution, 1963 Article 1, §17;

2. An award to Plaintiff for lost earnings and lost benefits, including future earnings and future benefits in the amount he would have earned, with interest, from the date that his employment was terminated;

3. An award to Plaintiff of compensatory damages sufficient to compensate him for his embarrassment and humiliation, and damage to his professional reputation;

4. An award to Plaintiff of the costs and disbursements of this action, including reasonable attorney's fees, and

5. An award to Plaintiff of such other and additional legal and/or equitable relief to which he may be entitled.

DATED: November 8, 2016                       /s/ Kevin B. Even
                                              Kevin B. Even (P38599)
                                              SMITH HAUGHEY RICE & ROEGGE
                                              Attorneys for Plaintiff
                                              900 Third St., Ste 204
                                              Muskegon, MI 49440
                                              231-724-4320
                                              231-724-4330 (fax)
                                              keven@shrr.com